IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

Crim. No. 15-00048 (CRC)

_____

UNITED STATES OF AMERICA

v.

DAVID BRONSTEIN, ET AL.,

Defendants.

## GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT TWO (40 U.S.C. § 6134) OF THE INFORMATION

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully opposes the defendants' Motion to Dismiss Count Two (40 U.S.C. § 6134, formerly 40 U.S.C. § 13j) of the Information ("Motion"). In support of its opposition, the government states the following:

## BACKGROUND

On April 1, 2015, the Supreme Court of the United States was in session and all nine Supreme Court Justices presided over the Supreme Court's oral argument calendar that morning. Before 8:30 a.m., defendants

David Bronstein, Matthew Kresling, Yasmina Mrabet, Belinda Rodriguez and Richard Saffle arrived at the Supreme Court. Shortly before 10:00 a.m., they entered the building and proceeded through security checkpoints. After clearing security, they entered the Upper Great Hall and went inside the courtroom.

In the courtroom, there are three sections of wooden benches where members of the public are allowed to sit, facing the bench, to observe the Court's proceedings. Each section is separated by a narrow aisle and has six wooden benches. There is additional seating for the public, individual chairs, separated by a narrow aisle and directly behind these wooden benches. Defendants Bronstein, Saffle and Rodriguez were seated in chairs directly behind the section of benches on the far left. Defendant Mrabet was seated in the section on the far left in the last bench in front of defendants Bronstein and Saffle. Defendant Kresling was seated in the middle section on the last bench, less than ten feet away from the other defendants.

At 9:55 a.m., the Justices, who were not inside the courtroom, were notified by the sounding of a buzzer that the proceedings would begin in five minutes. Prior to this time, Supreme Court police officers were inside the courtroom and standing at specific posts throughout the courtroom. There

were three officers standing in front of the benches where the public was seated. After the buzzer rang, Officer Dunford, in a loud voice, read the following statement:

> Welcome to the Supreme Court of the United States. During today's oral arguments it is important that you remain seated and silent. When the first case breaks, please remain silent. If you are remaining for the second case, remain seated. If you are leaving, silently exit the Courtroom. If you are seated to my left, please exit through the gates to your right. If you are seated in the Center Section please exit through the rear door directly behind you. If you are seated to my right, please exit through the gates to your left. Please alert one of the police officers if you observe anything suspicious, and in the event of an emergency, please remain calm and follow the directions of a police officer. Thank you.

At 10:00 a.m., the buzzer sounded a second time. Then, the Supreme Court Marshal struck a gavel to indicate the start of the Court session. The officers who were posted directly in front of the benches where the public was seated extended their arms and raised them in an upward motion repeatedly, indicating to the members of the public that they should stand. The Marshal opened Court, as the Justices were proceeding into the courtroom, by stating:

> The Honorable, the Chief Justice, and the Associate Justices of the Supreme Court of the United States. Oyez! Oyez! Oyez! All persons having business before the Honorable, the Supreme Court of the United States, are admonished to draw near and give their attention, for the Court is now sitting. God save the United States and this Honorable Court.

The Marshal then struck the gavel again, and the same officers extended their arms and moved them in a downward motion repeatedly, indicating to the members of the public that they should sit.[1] At approximately 10:02 a.m., all persons seated in the areas designated[2] for the members of the public sat down except for defendant Rodriguez.

Defendant Rodriguez remained standing with one arm in the air and stated, in a loud voice, "We rise to demand democracy. One person, one vote!" Officers Kempf and Dunford approached the defendant, and Officer Kempf detained the defendant and escorted her out of the courtroom into the Upper Great Hall. As Officer Dunford was returning to his post, defendant Kresling stood and stated, in a loud voice, "We rise to . . . . Money is not speech. One person, one vote!" Officer Dunford detained defendant Kresling and escorted him out of the courtroom. Defendant Mrabet then stood, with one arm in the air, and stated, in a loud voice, "Justices, is it not your duty to protect our right to self-government? The first . . . overturn *Citizens United*. One person, One Vote!" Officer Dunford detained and escorted defendant Mrabet out of

[1] Between the first buzzer and the second striking of the gavel, no one is allowed to enter or exit the courtroom.

[2] There are other areas in the courtroom designated for the press, bar members, and court staff.

the courtroom. Next, defendant Saffle stood and stated, in a loud voice, "Justices, is it not your job to ensure free, fair elections?" Officer Williams detained defendant Saffle and escorted him out of the courtroom. Finally, Chief Justice Roberts, from the bench, warned, "Anyone else interested in talking will be admonished that it's within the authority of this Court to punish such disturbances by criminal contempt." Immediately after that warning, defendant Bronstein began singing, "We who believe in freedom shall not rest; we who believe in freedom shall not rest." Officer Carr detained defendant Bronstein and escorted him out of the courtroom.

The entire incident took approximately two to four minutes. Each defendant was detained and escorted out of the courtroom into the Upper Great Hall without incident or injury. Each defendant was placed under arrest, and, over the next several hours, the arresting Officers, with the assistance of other officials and staff, processed the defendants in the roll call area of the U.S. Supreme Court building. The defendants were later transported to the U.S. Capitol Police station to conclude the arrest process.

On April 3, 2015, the United States Attorney's Office filed an Information charging the defendants with violating (1) 18 U.S.C. § 1507 (Count One) and (2) 40 U.S.C. § 6134 (Count Two). Count Two provides:

On or April 1, 2015, in the District of Columbia, defendants David Bronstein, Matthew Kresling, Yasmina Mrabet, Belinda Rodriguez, and Richard Saffle, did unlawfully make a harangue or oration, or utter loud, threatening, or abusive language in the Supreme Court Building or grounds. (Firearms, Fireworks, Speeches, and Objectionable Language in the Supreme Court Building and Grounds, in violation of Title 40, United States Code, Section 6134)

On May 14, 2015, defendants filed a motion to dismiss Count Two of the Information, arguing that 40 U.S.C. § 6134's "harangue" and "uttering" clauses violate the First Amendment.

## LEGAL STANDARD

A defendant "may raise by pre-trial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A defendant must file a pretrial motion challenging "a defect in the indictment or information" "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits[.]" Fed. R. Crim. P. 12(b)(3)(B). *See, e.g.*, *United States v. Kim*, 808 F. Supp. 2d 44, 55–57 (D.D.C. 2011) (reviewing and denying a motion to dismiss indictment on First Amendment grounds).

# ARGUMENT

40 U.S.C. § 6134 has three clauses: (1) The "discharge" clause, (2) the "harangue" clause, and (3) the "uttering" clause. The statute, as a whole, provides: "It is unlawful to [(1)] discharge a firearm, firework or explosive, set fire to a combustible, [(2)] make a harangue or oration,[3] or [(3)] utter loud, threatening, or abusive language in the Supreme Court Building or grounds." 40 U.S.C. § 6134. The Supreme Court "grounds" include the Supreme Court building, its plaza, and the public sidewalks surrounding the Supreme Court building. *See* 40 U.S.C. § 6101(b) (providing the streets encasing the Supreme Court "grounds").

Defendants' Motion to Dismiss argues that the harangue and uttering clauses violate the First Amendment (Mot. at 3, 7). They also contend that the harangue clause gives the Supreme Court Police "unfettered discretion" (Mot. at 6). Finally, they insist that the uttering clause's loud-language provision is unconstitutionally vague (Mot. at 13). For the reasons explained below, defendants' arguments lack merit.

---

[3] The dictionary defines "harangue" as "a forceful or angry speech." Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/harangue (last visited July 2, 2015). It defines "oration" as "a formal speech." Merriam Webster Dictionary, http://www.merriamwebster.com/dictionary/oration (last visited July 2, 2015).

# First Amendment Legal Principles

## *Forum Analysis*

"[T]he fundamental right to speak secured by the First Amendment does not leave people at liberty to publicize their views whenever and however and wherever they please." *Wood v. Moss*, 572 U.S. _, 134 S. Ct. 2056, 2066 (2014) (internal quotation marks omitted). "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP LDF*, 473 U.S. 788, 799–800 (1985); *see Int'l Soc. for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992) ("[T]he government need not permit all forms of speech on property that it owns and controls."). "Recognizing that the Government, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated, the [Supreme] Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Cornelius*, 473 U.S. at 800 (internal quotation marks omitted).

"Accordingly, the extent to which the Government can control access depends on the nature of the relevant forum." *Id.*

Restrictions on expression may be subject to exacting standards when they apply to traditional public forums — property traditionally opened to the public for expressive activity — or designated public forums — property the government "has opened for use by the public as a place for expressive activity." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

But as defendants acknowledge, the conduct at issue in this case took place in a "non-public forum," which has not been traditionally opened or designated to be opened for expressive activities. *See* Mot. at 5. In a non-public forum, restrictions on expressive activities "must survive only a much more limited review." *Lee*, 505 U.S. at 679. Restrictions "need only be reasonable" and viewpoint neutral. *Id.*; *accord Perry Educ. Ass'n*, 460 U.S. at 46. "In a nonpublic forum[,] the government need not adopt the most narrowly tailored means available." *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 685 F.3d 1066, 1073 (D.C. Cir. 2012).

### *The Overbreadth Doctrine*

A litigant generally does not have standing to challenge the constitutionality of a statute as applied to others not before the Court. *See Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973). There is, however, a limited exception "in the area of the First Amendment." *Id.* at 611; *see also United States v. Williams*, 553 U.S. 285, 292 (2008). "[T]he principal advantage of the overbreadth doctrine for a litigant is that it enables him to benefit from the statute's unlawful application *to someone else*." *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 483 (1989) (emphasis in original).

The "overbreadth doctrine seeks to strike a balance between competing social costs." *Williams*, 553 U.S. at 292. "On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas." *Id.* "On the other hand, invalidating a law that in some of its applications is perfectly constitutional — particularly a law directed at conduct so antisocial that it has been made criminal — has obvious harmful effects." *Id.* Overbreadth challenges also "invite judgments on fact-poor records" and "allow a determination that the law would be unconstitutionally applied to

different parties and different circumstances from those at hand." *Sabri v. United States*, 541 U.S. 600, 609 (2004). For these reasons, "[i]nvalidation for overbreadth is strong medicine that is not to be casually employed." *Williams*, 553 U.S. at 293 (internal quotation marks omitted).

"In order to maintain an appropriate balance," the Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be *substantial,* not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292 (emphasis added); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008). "Even where a statute at its margins infringes on protected expression, facial invalidation is inappropriate if the remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct[.]" *Osborne v. Ohio*, 495 U.S. 103, 112 (1990) (internal quotation marks omitted).

Even when a statute is determined to be substantially overbroad, it may be enforced if "a limiting construction *or* partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Broadrick*, 413 U.S. at 613. (emphasis added); *see also id.* ("Facial overbreadth has not been invoked when a limiting construction has

been or could be placed on the challenged statute."); *Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting that partial invalidation may save a statute from an overbreadth challenge); *Boos v. Barry*, 485 U.S. 312, 330–31 (1988) ("It is well settled that federal courts have the power to adopt narrowing constructions of federal legislation."). "Indeed, the federal courts have the duty to avoid constitutional difficulties by doing so if such a construction is fairly possible." *Boos*, 485 U.S. at 331.

## I.   Defendants Have No Standing to Challenge 40 U.S.C. § 6134's Provisions That Are Not At Issue In This Case.

Defendants do not argue that they had a First Amendment right to yell and sing inside the Supreme Court courtroom. That argument would clearly lack merit. See *infra* Part II. Instead, defendants principally challenge § 6134's provisions that regulate speech on the Supreme Court plaza and on the sidewalks surrounding the Supreme Court. No one contends, however, that defendants violated § 6134 in the plaza or on the sidewalks. Absent application of the overbreadth doctrine, which is not properly applied here, see *infra* pp. 15–17, defendants have no standing to challenge § 6134's provisions regulating the plaza or the sidewalks. *See Broadrick*, 413 U.S. at 610 ("[A] person to whom a statute may constitutionally be applied will not be

heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.").

Defendants point out that the Information pleads that they violated § 6134 "'in the Supreme Court Building *or grounds*'" (Mot. at 5) (quoting Dkt. 25; emphasis added) — apparently an effort to fashion an as-applied challenge to § 6134's regulations as applied to the plaza and sidewalks. The Information alone, however, does not confer standing on defendants to make an "as-applied" challenge. *See generally FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record.") (internal quotation marks and citation omitted). Rather, "[a]n as-applied challenge . . . requires an *analysis of the facts* of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Wis. Right to Life, Inc. v. FEC*, 466 F. Supp. 2d 195, 211 (D.D.C. 2006) (internal quotation marks omitted; emphasis added).

The facts on this record show that defendants violated § 6134 inside the Supreme Court courtroom — not on the plaza or the sidewalks. The Supreme

Court courtroom is a part of the Supreme Court "grounds." *See* 40 U.S.C. § 6101(b) (providing the streets encasing the Supreme Court "grounds"). The facts do not show that defendants violated § 6134 on the plaza or the sidewalks. Therefore, notwithstanding the Information's reference to "grounds," defendants have no basis to make an "as-applied" challenge to § 6134's regulations as they pertain to the Supreme Court plaza and sidewalks.

Similarly, defendants cannot advance an as-applied challenge to § 6134's "abusive" language provision, *see* Mot. at 14, because the government does not (and will not) contend that defendants used "abusive" language. Indeed, even though the Information refers to § 6134's "threats" provision, defendants concede that "[t]he Court need not determine if the prohibition on 'threatening' utterances is constitutional at this time" because "it does not appear that the government intends to argue at trial that Defendants' alleged utterances were 'threatening'" (Mot. at 15). For the same reason, the Court need not consider whether § 6134's provision regulating "abusive" language is constitutional.[4]

---

[4] Indeed, if the Information were sufficient to bestow standing, the government could take away standing by merely amending the Information (continued . . .)

Additionally, there is no legitimate reason to apply the "strong medicine" of overbreadth to permit defendants an opportunity to challenge provisions of § 6134 that they did not violate — *i.e.*, those provisions concerning "abusive" language, the plaza, and the sidewalks. In *United States v. Grace*, 461 U.S. 171 (1983) (*Grace II*), for example, the Supreme Court declined to decide the constitutionality of 40 U.S.C. § 13k (recodified as 40 U.S.C. § 6135), which prohibits assemblages or the displaying of signs in "the Supreme Court building and grounds," as applied to the Supreme Court plaza. *Id.* at 175. The Court noted that "the controversy presented by appellees concerned their right to use the public sidewalks surrounding the Court building for the communicative activities they sought to carry out," and it limited the scope of its review to "only whether the proscriptions of § 13k are constitutional *as applied to the public sidewalks*." *Id.* (emphasis added).

---

(. . . continued)
to exclude superfluous statutory language. Thus, to the extent this Court agrees with defendants that the Information gives them standing to challenge § 6134's provisions not at issue here, the government will file a second superseding Information to remove these provisions.

This Court should do the same: confine defendants' constitutional challenge to the provisions of § 6134 that they actually violated.[5]

Had Congress adopted separate statutes (instead of one, § 6134) to regulate the building, the plaza, and the sidewalks, it would be obvious that defendants would lack standing to challenge those statutes they did not violate — notwithstanding the overbreadth doctrine. See *supra* note 5. There is no reason to conclude otherwise merely because Congress chose to adopt one statute (as opposed to three) to regulate the Supreme Court building, plaza, and sidewalk.

---

[5] *See also FW/PBS*, 493 U.S. at 233–34 (rejecting a facial challenge where an "[e]xamination of the record" did not show that a party was affected by the challenged provisions); *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 350 (6th Cir. 2007) (rejecting an overbreadth challenge because plaintiff's standing to challenge one provision of the statute "does not magically carry over to allow it to litigate other independent provisions of the ordinance without a separate showing of an actual injury under those provisions"); *Covenant Media of S.C., LLC v. City of North Charleston*, 493 F.3d 421, 429–30 (4th Cir. 2007) ("Although there is broad latitude given facial challenges in the First Amendment context, a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by application of those provisions.") (internal quotation marks and citation omitted); *CAMP LDF, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271 (11th Cir. 2006) ("A plaintiff who has established constitutional injury under *a provision* of a statute as applied to his set of facts may also bring a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court under *that provision*.") (emphases added).

The lack of any remedy for defendants, if they were permitted to challenge provisions of § 6134 not at issue here, underscores the impropriety of extending the overbreadth doctrine to them. At best, the remedy would be either to apply a limiting construction to these provisions or to sever them from the statute itself. *See Broadrick*, 413 U.S. at 613. Either way, the portions of § 6134 regulating "harangue and orations" and "loud" language in the Supreme Court building — the only portions relevant to defendants — would remain intact, and there would be no basis to dismiss Count Two against defendants. In effect, then, defendants are asking the Court to decide a constitutional question that would not remotely have any implication for them. *See Boos*, 485 U.S. at 331 ("Indeed, the federal courts have the duty to avoid constitutional difficulties by doing so if such a construction is fairly possible.").[6]

---

[6] In *Hodge v. Talkin*, 949 F. Supp. 2d 152 (D.D.C. 2013), the district court analyzed a portion of § 6135 (the assemblages clause) that the government insisted was not implicated by the facts of that case. The district court nevertheless considered the constitutionality of the assemblages clause because, "unlike in *Grace II*, the plaintiff [t]here was formally charged in the Information with violation of the statute as a whole[.]" *Id.* at 177. For the reasons already stated, this Court should reject that reasoning.

As way of background, *Hodge* involved a First Amendment challenge to a *different* statute (40 U.S.C. § 6135, which regulates signs, displays, and

(continued . . .)

Accordingly, defendants have not properly raised an as-applied challenge to § 6134's "abusive" language provision or any of its provisions regulating speech in the plaza or on the sidewalks. The "strong medicine" of overbreadth should not be extended to allow defendants to challenge parts of § 6134 not at issue in this case. The Court should, therefore, dismiss defendants' challenges to § 6134's "abusive" language provision or any of its provisions regulating speech in the plaza or on the sidewalks.[7] To the extent defendants challenge § 6134's provisions that are actually at issue in this case — *i.e.*, the provisions proscribing harangues, orations, and loud language

---

(. . . continued)

assemblages in the Supreme Court building and on its grounds), in *different* forums (the plaza and the sidewalks) than the forum that is currently before this Court (the building). The government has appealed the district court's order in *Hodge* finding § 6135 unconstitutional. Oral argument was held on September 23, 2014, and the parties are awaiting a decision from the D.C. Circuit.

[7] In any event, defendants' overbreadth challenge to § 6134 as applied to the Supreme Court plaza and sidewalks clearly lacks merit. Section 6134 furthers the government's legitimate interests in the order and decorum in the Supreme Court grounds. *See Grace II*, 461 U.S. at 182 (acknowledging "the necessity to protect persons and property or to maintain proper order and decorum within the Supreme Court grounds"); *cf. Oberwetter v. Hillard*, 639 F.3d 545, 554 (D.C. Cir. 2011) ("[T]he Park Service has a substantial interest in promoting a tranquil environment at our national memorials."). Defendants have not shown that § 6134 substantially reaches protected speech "not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292.

in the Supreme Court building — those challenges fail on their merits. *See infra* Parts II & III.

## II. The Harangue Clause and the Uttering Clause's Loud-Language Provision Do Not Violate the First Amendment.

Defendants concede that the Supreme Court building is a non-public forum (Mot. at 5). *See Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997) ("A courthouse — and, especially, a courtroom — is a nonpublic forum."); *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998) ("The lobby of the courthouse is not a traditional public forum or a designated public forum, not a place open to the public for the presentation of views. . . . It is a 'nonpublic forum,' which government 'may reserve . . . for its intended purposes'") (quoting *Perry Educ. Ass'n*, 460 U.S. at 46 (second alteration in original)). Therefore, the government merely has to show that the harangue clause and the uttering clause's prohibition on "loud" language inside the Supreme Court building are reasonable and viewpoint neutral regulations. *See Perry Educ. Ass'n*, 460 U.S. at 46. That showing can be easily made.

### A.    The Harangue Clause Is Reasonable and Viewpoint Neutral.

Section 6134's prohibition on "harangue[s] or oration[s]" in the Supreme Court building is "viewpoint neutral" because, on its face, it does not favor one viewpoint over another.

The harangue clause is also reasonable, as evidenced by this case. Defendants cannot seriously claim a First Amendment right to interfere with ongoing judicial proceedings, or to use the Supreme Court building to berate others.  The purpose of the Supreme Court building is not to provide a forum for members of the public to host any harangue or oration that they would like. Rather, the Supreme Court building's principal purpose is to provide a forum where legal disputes can be adjudicated in an orderly and decorous way. *See Cornelius*, 473 U.S. at 806 ("Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral."). The harangue clause furthers this legitimate purpose in three ways.

First, the prohibition on harangues and orations maintains order and decorum in the Supreme Court building, especially its courtroom.[8] *See Cox v. Louisiana*, 379 U.S. 559, 562 (1965) ("the unhindered and untrammeled functioning of our courts is part of the very foundation of our constitutional democracy"); *Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640, 650–51 (1981) ("[C]onsideration of a forum's special attributes is relevant to the constitutionality of a regulation since the significance of the governmental interest must be assessed in light of the characteristic nature and function of the particular forum involved."); *cf. Mahoney v. Doe*, 642 F.3d 1112, 1118 (D.C. Cir. 2011) (holding "the District's interest in controlling the esthetic appearance of the street in front of the White House is substantial"). "It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country." *Illinois v. Allen*, 397 U.S. 337, 343 (1970).

Second, the ban on harangues and orations in the Supreme Court building helps to preserve the Court's appearance as a judicial body not

---

[8] Based on the legislative history of the Act that § 6134 is a part of, "it is fair to say that the purpose of the Act was to provide for the protection of the building and grounds and of the persons and property therein, as well as the maintenance of proper order and decorum." *Grace II*, 461 U.S. at 182.

swayed by outside influence. *See Grace II*, 461 U.S. at 182–83 (recognizing the importance of the appearance of judicial impartiality). The defendants' conduct in this case, for example, was specifically targeted at the Supreme Court Justices to disrupt the Justices' scheduled oral argument and to complain about their judicial decisions. There is little doubt that "[a] State may adopt safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence." *Cox*, 379 U.S. at 562; *see also Williams-Yulee v. Florida Bar*, _ U.S. _, 135 S. Ct. 1656, 1673 (2015) ("States have a compelling interest in preserving public confidence in their judiciaries.").

Finally, harangues and orations in the building may of course attract attention and crowds, which could interfere with the experience of others in the building. The harangue clause helps to alleviate this legitimate concern; there can be no serious dispute that the conduct at issue in this case interfered with the experience of the other spectators, who sought to watch judicial proceedings and not disruptions. *Cf. Initiative & Referendum Inst.*, 685 F.3d at 1073 ("[C]ertainly the Postal Service is free to adopt multiple means to ensure that customers visiting the post office can transact their business unimpeded.").

Accordingly, the prohibition on harangues and orations in the Supreme Court building complies with the First Amendment because it is viewpoint neutral and reasonable. Defendants have not even properly attempted to demonstrate that the clause is unconstitutional as applied to their own conduct.   And defendants have not shown that the harangue clause substantially reaches protected speech "not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292.

## B.   The Uttering Clause's Prohibition of Loud Language in the Supreme Court Building is Reasonable and Viewpoint Neutral.

Similarly, the uttering clause's ban on "loud" language in the Supreme Court building is viewpoint neutral because it does not favor one viewpoint over other, and it is reasonable.

Like the harangue clause, a prohibition on "loud" language in the Supreme Court building, particularly the courtroom, promotes the Court's order and decorum. *See Sefick*, 164 F.3d at 373 ("the halls of justice may be kept hushed"); *Berner*, 129 F.3d at 26 ("Within this staid environment, the presiding judge is charged with the responsibility of maintaining proper order

and decorum.").[9] The loud-language ban also permits the Justices to conduct the Court's business — *e.g.*, hear oral arguments and announce opinions — without disruption or interference. *See Berner*, 129 F.3d at 26 ("A courtroom's very function is to provide a locus in which civil and criminal disputes can be adjudicated.").

The facts of this case illustrate that, if the public were permitted to engage in loud language in the Supreme Court building, especially in the courtroom, the Court's ability to function would be severely diminished. After Officer Dunford's warning to "remain seated and silent," and after the Justices entered the Courtroom, defendants began to yell or sing. Their loud language caused significant disruption in the courtroom and prevented oral arguments from moving forward on time. The Supreme Court Police were forced to remove defendants from the courtroom, which caused further disruption and delay. At one point, Chief Justice Roberts had to warn the entire courtroom, "Anyone else interested in talking will be admonished that

---

[9] *Cf. Oberwetter*, 639 F.3d at 554 ("the Park Service has a substantial interest in promoting a tranquil environment at our national memorials"); *Henderson v. Lujan*, 964 F.2d 1179, 1184 (D.C. Cir. 1992) ("This interest in maintaining a tranquil mood at the Memorial wall is similar to ones that the Supreme Court and this court have recognized as substantial.").

it's within the authority of this Court to punish such disturbances by criminal contempt." Undeterred, defendant Bronstein began singing, causing even further disruption to the court proceeding.[10]

Notably, defendants have not shown that the ban on loud language in the Supreme Court building is substantially overbroad, especially when judged against its "plainly legitimate sweep." *Williams*, 553 U.S. at 292. Specifically, there is no evidence that the ban substantially restricts language that is in accordance with the building's order and decorum or that does not interfere with the Court's ability to perform its job.[11]

Defendants complain that the loud-language provision does not go far enough because it does not forbid "air horns in the middle of oral arguments" (Mot. at 12). Yet, as they point out (Mot. at 10), Regulation Five proscribes

---

[10] If a defendant on trial cannot disrupt a court proceeding, *see Illinois v. Allen*, 397 U.S. at 343, a courtroom spectator should certainly not be permitted to do so.

[11] Defendants' reliance (at 8–9) on *Saia v. New York*, 334 U.S. 558 (1948), *Kovacs v. Cooper*, 336 U.S. 77 (1949), and *Edwards v. South Carolina*, 372 U.S. 229 (1963), to support their argument that § 6134's loud-language provision violates the First Amendment is misplaced. These cases dealt with ordinances in *public* forums, which are subject to a stricter standard than regulations in non-public forums like the Supreme Court building. See *supra* p. 9.

"any noise disturbance," and defines that phrase in such a way that plainly prohibits air horns during oral arguments. *See* Supreme Court of the United States, Building Regulations, Regulation Five, http://www.supremecourt.gov/publicinfo/buildingregulations.aspx#Reg5 (last visited July 13, 2015).

In any event, defendants' complaint about the underinclusiveness of the loud-language provision fails, because "the First Amendment imposes no freestanding 'underinclusiveness limitation.'" *Williams-Yulee*, 135 S. Ct. at 1668 (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 387 (1992)). The fact that it would have been reasonable for § 6134 to ban air horns does not render unconstitutional its ban on loud language. *See id.* (noting that the Court has "upheld laws — even under strict scrutiny — that conceivably could have restricted even greater amounts of speech in service of their stated interests").[12]

_____

[12] While "underinclusiveness can raise doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint[,]" *Williams-Yulee*, 135 S. Ct. at 1668 (internal quotation marks omitted), defendants do not advance that claim here. And, as already shown *supra* pp. 23–24, § 6134's ban on "loud" language in the Supreme Court serves vital government interests and, on its face, is viewpoint neutral. Thus, there is no reason to conclude that the loud provision is merely a ploy to "disfavor[] a particular speaker or viewpoint." *Williams-Yulee*, 135 S. Ct. at 1668 (internal quotation marks omitted).

## III. The Harangue Clause and the Uttering Clause's Loud-Language Provision Are Not Unconstitutionally Vague.

Defendants contend the harangue clause and the uttering clause's loud-language provision are unconstitutionally vague because (1) the harangue clause "places unfettered discretion in the police" and (2) the phrase "loud" language offers "no criteria at all by which to determine whether [a visitor's] speech will be criminal" and "vests too much discretion in the police" (Mot. at 6, 13). These vagueness challenges also fail.

A vagueness challenge is rooted in the Due Process Clause, not the First Amendment. *See Williams*, 553 U.S. at 304. Vague laws are constitutionally problematic because they "may trap the innocent by not providing fair warning." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Vague laws also fail to avert "arbitrary and discriminatory application" and may discourage citizens from engaging in constitutionally protected activity for fear of prosecution. *Id.* at 109. "Where the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (internal quotation marks omitted; alteration in original); *see also Wash. Mobilization*

*Comm. v. Cullinane*, 566 F.2d 107, 117 (D.C. Cir. 1977) ("an ordinance is void for vagueness if it is an unrestricted delegation of power, which in practice leaves the definition of its terms to law enforcement officers, and thereby invites arbitrary, discriminatory and overzealous enforcement."). Nevertheless, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned*, 408 U.S. at 110.

One "'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (quoting *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 (1982)). "That rule makes no exception for conduct in the form of speech." *Id.* at 20; *see also id.* ("[A] plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the Fifth Amendment for lack of notice. And he certainly cannot do so based on the speech of others.").

## A.   The Harangue Clause Does Not Give the Supreme Court Police Unfettered Discretion.

The harangue clause does not give the Supreme Court Police "unrestricted delegation of power," *Cullinane*, 566 F.2d at 117, especially in the context of defendants' outbursts in the courtroom. That clause explicitly

forbids a "harangue" and an "oration." The ordinary definition of "harangue" is "a forceful or angry speech," and the ordinary definition of "oration" is "a formal speech."[13]

These terms give the Supreme Court Police hardly any leverage — and certainly not rampant discretion — "to pursue their personal predilections," *Kolender*, 461 U.S. at 358 (internal quotation marks omitted), or to exercise "arbitrary, discriminatory and overzealous enforcement," *Cullinane*, 566 F.2d at 117. "[T]he Constitution does not ban *all* discretion on the part of police officers or prosecutors[,] as [e]ffective law enforcement often requires the exercise of some degree of police judgment." *Thibodeau v. Portuondo*, 486 F.3d 61, 69 (2d Cir. 2007) (internal quotation marks omitted; second alteration in original). Indeed, it is well established that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity[,]" *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989), and courts have upheld provisions far more discretionary than the harangue clause. *See, e.g.*, *Ward*, 491 U.S. at 794 (upholding noise ordinances

---

[13] Merriam Webster Dictionary, http://www.merriamwebster.com/dictionary/oration (last visited July 2, 2015); Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/harangue (last visited July 2, 2015).

that were "undoubtedly flexible, and the officials implementing them will exercise considerable discretion"); *Cullinane*, 566 F.2d at 119 (ordinance giving officers discretion to determine when a police-line was "necessary" to achieve certain specified aims did not amount to unfettered discretion).[14]

## B.    The Uttering Clause's Loud-Language Provision Clearly Proscribed Defendants' Language in the Courtroom.

Defendants' assertion that the loud-language provision is unconstitutionally vague can also be quickly rejected. A person of common intelligence, especially after being warned to remain silent, would understand that yelling and singing inside the Supreme Court courtroom is prohibited by the loud-language provision. *Cf. United States v. Agront*, 773 F.3d 192, 197 (9th Cir. 2014) (rejecting vagueness challenge where a "'person

---

[14] Defendants contend that "the Supreme Court and its police force have created an exemption for certain orations by a certain class of individuals" — namely, "attorneys and litigants addressing the media after oral arguments" on the plaza, a forum not issue at here (Mot. at 6). These media conferences are not ordinarily regarded as harangues or orations. In any event, "[i]mplicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity." *Perry Educ. Ass'n*, 460 U.S. at 49; *see also Cornelius*, 473 U.S. at 811 ("The First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose."). The plaza is a non-public forum because it has not been traditionally opened for widespread expressive activities.

of common intelligence would understand that the prohibition on 'loud, boisterous, and unusual noise' is in relation to the environment of a VA facility as opposed to a baseball stadium or train station.'"). Defendants do not argue otherwise.

Instead, as in *Humanitarian Law Project*, defendants concoct (at 14) "hypothetical situations designed to test the limits of" the loud-language provision. 561 U.S. at 22. But, as the Supreme Court noted in *Humanitarian Law Project*, "[w]hatever force these arguments might have in the abstract, they are beside the point here." *Id.* Section 6134's ban on loud language *is* "clear in [its] application to [defendants'] conduct, which means that [defendants'] vagueness challenge must fail." *Id.* at 21.[15]

---

[15]   In any event, notwithstanding defendants' suggestion to the contrary, § 6134 is not facially vague simply because there is a "possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved[.]" *Williams*, 553 U.S. at 306. Rather, what renders a statute vague is "the indeterminacy of precisely what that fact is." *Id.* The Supreme Court has thus upheld an anti-noise ordinance where "the prohibited disturbances [were] easily measured by their impact on the normal activities of the school." *Grayned*, 408 U.S. at 112. The loud-language provision is "easily measured by [its] impact on the normal activities" of the Supreme Court and, therefore, not unconstitutionally vague. *See also Kovacs*, 336 U.S. at 79 (rejecting vagueness challenge to ordinance that banned "loud and raucous" sound amplification).

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court deny the defendants' Motion to Dismiss Count Two of the Information.

Respectfully submitted,

VINCENT H. COHEN, JR.
Acting United States Attorney

JOHN P. MANNARINO
Assistant United States Attorney

By: _____/s/_____
ANGELA S. GEORGE, D.C. Bar No. 470567
Assistant United States Attorney
Violent Crimes/Narcotics Trafficking Section
555 4th Street, N.W., Rm. 4444
Washington, D.C. 20530
Angela.George@usdoj.gov
(202) 252-7758

By: _____/s/_____
JAMES M. PEREZ, D.C. Bar No. 986382
Assistant United States Attorney
Appellate Division
555 4th Street, N.W., Rm. 8104
Washington, D.C. 20530
James.Perez@usdoj.gov
(202) 252-6829

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading was served via the Electronic Case Filing system upon the defendants' counsel, Jeffrey Light, Esq., this 17th day of July, 2015.


_____/s/_____
ANGELA S. GEORGE
Assistant United States Attorney