**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA,**

**v.**                                      **Case No. 1:15-cr-48-2 (CRC)**

**DAVID BRONSTEIN, et. al.,**

       **DEFENDANT.**

**SENTENCING MEMORANDUM FOR MATTHEW KRESLING**

Through counsel, Defendant, Matthew Kresling, files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives pursuant to 18 U.S.C. §3553(a).

I.    **THE SENTENCING GUIDELINES ARE ADVISORY**

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in Blakely v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines (hereinafter the "Guidelines"). United States v. Booker, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Guidelines, the Court found no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Guidelines in the cases before the Court. Id. at 751.

The Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. §3553(b)(1) or which rely upon the Guidelines mandatory nature, 18 U.S.C. §3742(e), incompatible with its Sixth Amendment holding. Booker, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions, making

1

the Guidelines effectively advisory. Id. at 757.

Instead of being bound by the Guidelines, the Sentencing Reform Act, as revised by

Booker, requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. §3553(a)(4)

(Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as

well. See, §3553(a); Booker, 125 S. Ct. at 757.

Thus, under Booker, sentencing courts must treat the guidelines as just one of a number

of sentencing factors set forth in 18 U.S.C. §3553(a). The primary directive in §3553(a) is for

sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with

the purposes set forth in paragraph two of 18 USC §3553(a)(2).

In determining the minimally sufficient sentence, §3553(a) further directs sentencing

courts to consider four factors, (1) The nature and circumstances of the offense and the history

and characteristics of the defendant; (2) The kinds of sentences available; (3) The need to avoid

unwarranted sentence disparities among defendants with similar records who have been found

guilty of similar conduct; and (4) the need to provide restitution to any victims of the offense.

Those factors are discussed in further detail below.

Other statutory sections also give the District Court direction in sentencing.  Under 18

U.S.C. §3582, the judge is required to "recogniz[e] that imprisonment is not an appropriate

means of promoting correction and rehabilitation."

Under 18 U.S.C. §3661, "no limitation shall be placed on the information concerning the

background, character, and conduct of [the defendant] which a court of the United States may

receive and consider for the purpose of imposing an appropriate sentence" (*emphasis added*).

This statutory language certainly overrides the (now-advisory) policy statements in Part H of the

Guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the

defendant's age, educational and vocational skills, mental and emotional conditions, drug or

2

alcohol dependence, and lack of guidance as a youth.  See U.S.S.G. §5H1.

The Supreme Court, in <u>Beckles v. United States</u>, 137 S. Ct. 886, 894 (2017), emphasized that the Guidelines "merely guide the district courts' discretion," and "do not constrain th[at] discretion[.]".  The Guidelines simply "advise sentencing courts how to exercise their discretion within the bounds established by Congress." *Id.* at 895.

This Court has ample discretion to impose a sentence that is a significant downward departure from what is recommended by the Guidelines for the defendants. After fulfilling the procedural requirements, including calculating the guideline sentence, the Court can and should apply the statutory factors to substantially depart downward from the Guidelines in this case.

## II.  APPLICATION OF THE STATUTORY SENTENCING FACTORS TO THE FACTS OF THIS CASE

In the present case, the following factors from 18 USC §3553(a) must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

### 1. The Nature and Circumstances of the Offense and the History and Characteristics of the Offender.

(a) <u>Nature and Circumstances of Offense</u>

The Supreme Court has observed that the enactment of 18 U.S.C. § 1507 "resulted from the picketing of federal courthouses by partisans of the defendants during trials involving leaders of the Communist Party. This picketing prompted an adverse reaction from both the bar and the general public." *Cox v. Louisiana*, 379 U.S. 559, 561 (1965).  The legislative history of 18 U.S.C. § 1507 reveals that although Congress included the intent to influence provision, it was primarily concerned with intent to obstruct the administration of justice. The provision concerning picketing of courthouses was prompted by pickets which "have ranged from 300 to

750 and the noise created by loud chanting (and in one instance, by sound track) seriously

hampered the administration of justice." See, 96 Appx. Cong. Rec. A6898 at A7125 (Sep. 23,

1950) (résumé of the Internal Security Act of 1950), attached hereto as Exhibit 1.

When Congress considered criminal justice reform in 1981, the distinction between the

two types of intent was made explicit.  The Senate Committee on the Judiciary proposed a new

offense which would have carried forward only the portion of 18 U.S.C. § 1507 which prohibits

an intent to influence.  A copy of the Senate Judiciary Committee Report is attached hereto as

Exhibit 2.  More serious acts done with intent to obstruct justice would have been prohibited by

other sections, such as those involving communications with jurors or obstructing a government

function by physical interference. See, Senate Judiciary Committee Report, Exhibit 2.

After noting that 18 U.S.C. § 1507 is punishable by up to one year in prison, the

Committee recommended that this new section be classified as a Class A misdemeanor. The

National Commission would have gone even further, recommending a "drastic reduction in

severity to a maximum of thirty days in prison." See, Senate Judiciary Committee Report,

Exhibit 2.

The Committee also sought to distinguish between conduct aimed at intimidating those

involved with the proceeding from conduct simply designed to show the public one's position on

an issue pending before a court. The proposed crime would therefore have contained a defense

designed to "permit[] interested persons at reasonable times to show to the public their position

on an issue or case that many [sic] be pending before a court so long as the conduct is clearly an

expression of an opinion and not an attempt to intimidate those persons responsible for or

participating in the proceeding." See, Senate Judiciary Committee Report, Exhibit 2.  The

Committee noted that "[i]n the Nation's past, there have been cross-burnings by angry crowds,

vigils by men in white hoods, and demonstrations by would-be vigilantes carrying ropes," and

stated that "[w]hile such persons may give expression to their views under our system of government, the may not do so at the expense of rights of defendants and litigants in a manner specifically designed to assert improper influence on a judicial proceeding[.]" See, Senate Judiciary Committee Report, Exhibit 2.

   (b) History and Characteristics of Mr. Kresling

     Mr. Kresling is a 43 year old male with a Bachelor of Arts degree in creative writing and English, Mr. Kresling has spent a majority of his adult life as a civil servant.  In 2008, he worked as a community organizer for Obama for America.

     Mr. Kresling has also practices non-violent civil disobedience.  Mr. Kresling does not just talk about being a civil servant, he lives it every day. Mr. Kresling has dedicated his life and risked his liberty fighting for causes across the United States.  As discussed by Rabbi Michael Pollack, Mr. Kresling recently walked 105 miles from Philadelphia, Pennsylvania to Harrisburg, Pennsylvania to support anti-corruption, pro-democracy bills.  See, Rabbi Pollack Letter, attached hereto as Exhibit 3.

     Mr. Kresling is committed to placing himself before those who have the power to end injustice.  Zealous advocacy for disenfranchised citizens of the United States is precisely what brought Mr. Kresling to the Supreme Court on April 1, 2015.  Mr. Kresling was brought before this Court because of the manner in which he advocated against a previous Supreme Court Decision regarding campaign contribution.  His actions, although punishable, are far from the actions of the Ku Klux Klan which led to the enactment of 18 USC §1507 and 40 USC §6134.

   **2.**  **The Need for the Sentence Imposed to Promote Certain Statutory Objectives.**

  **(a)** To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

     Mr. Kresling understands the history of the Supreme Court and why he was charged with

18 USC Code §1507 and 40 USC §6134.   The offense of 18 U.S. Code §1507, with its history

rooted in racism and threatened violence, lends this charge to fall within the scope of obstruction

of justice for purposes of the Guidelines.  It was not Mr. Kresling's intent to obstruct justice or

threaten violence against any member of the judiciary.

**(b)** To afford adequate deterrence to criminal conduct.

Mr. Kresling understands the Court's need to deter others from engaging in the same or

similar conduct.  While awaiting trial on this matter, Mr. Kresling spent one day in jail and 25

months on supervised probation.

**(c)** To protect the public from further crimes of the defendant.

Mr. Kresling's criminal history is rooted in civil disobedience.  In fact, the reason he is

before the Court was due to desire to advocate for the public and his attempt to protect

democracy.

**3.   The Kinds of Sentences Available.**

In Booker, the Supreme Court severed and excised 18 U.S.C. §3553(b), the portion of the

federal sentencing statute that made it mandatory for courts to sentence within a particular range

within the Guidelines. Booker, 125 S. Ct. at 756.  This renders the Guidelines advisory. Id.

Furthermore, the Report concludes that the Guidelines recommend a period incarceration of 10

to 16 months, which is above the statutory limit of 12 months provided in 18 U.S. Code § 1507.

**4.   The Sentencing Range Established by the Sentencing Commission.**

Mr. Kresling does understand the result reached by the Presentence Investigation Report

("Report") was based on his background and the parameters of the guidelines.  However, due to

the Guidelines deficiency in determining punishment for crimes punishable up to one year, the

Court should depart from the Guidelines.

The Guidelines for crimes related to Obstruction of Justice do not directly address

6

violators of 18 U.S. Code §1507, a crime only punishable up to one year.  Virtually all other

Felony Obstruction of Justice crimes are felonies, punishable by incarceration from 3 years (See,

18 U.S. Code § 1512(d)(4)) to 30 years (See, 18 U.S. Code § 1512(a)(3)(ii)). See, also 18 U.S.

Code § 1505 - Obstruction of proceedings before departments, agencies, and committees, which

is punishable up to 5 years; 18 U.S. Code § 1503 - Influencing or injuring officer or juror

generally, which is punishable for 10 years if the obstruction was killing or attempted killing of

an officer or juror; 18 U.S. Code § 1518 - Obstruction of criminal investigations of health care

offenses, which is punishable up to 5 years.

In contrast, violators of 18 U.S. Code §1507 - Picketing or parading, "shall be fined

under this title *or* imprisoned not more than one year, or both". (***emphasis added***).  This is

among the least punishable offenses in 18 U.S. Code Chapter 73 - Obstruction of Justice.  The

guidelines do not take into account the varying ranges of punishment in that Chapter.

The Guidelines, as it pertains to Mr. Kresling, provides for incarceration on the lowest

end of punishment, had he committed a felony.  The guidelines in the Report recommended an

active jail sentence of 10-16 months, more than the punishment allowed for violating 18 U.S.

Code §1507.  If the Court takes the pro rata share of the maximum punishment available for this

offense compared to an Obstruction of Justice charge carrying a potential 10-year sentence, the

guidelines would allow for a sentence ranging from no jail time one and a half months.

This is precisely why defense is requesting a downward departure from the guidelines.

Here, the guidelines are not useful to the Court in determining how to punish a defendant for a

crime which only carries a punishment of up to one year.

**5.   <u>The Need to Avoid Unwarranted Disparities.</u>**

There have been two recent prosecutions for conduct almost identical to that engaged in

by Mr. Kresling and both resulted in sentences of time served. In order to avoid disparities in

7

sentencing, a similar sentence of time serve should be imposed here.

On February 26, 2014, Kai Newkirk began a speech in the Supreme Court which interrupted court proceedings. See, Noah Newkirk Information, attached hereto as Exhibit 4.  Mr. Newkirk shouted slogans such as "Money is not speech," "Corporations are not people," and "Overturn *Citizens United*."[1] He pled guilty to the Information and was sentenced by the District of Columbia Superior Court to time served.  See, Noah Newkirk Information, attached hereto as Exhibit 4.

On January 21, 2015, a group of eight individuals stood, one after another, and yelled loudly toward the front of the courtroom. The defendants yelled statements such as "Overturn *Citizens United*," "One person, one vote," and "We are the 99 percent[.]"[2] They yelled loudly enough to divert the attention of everyone inside the courtroom. See, Curt Ries, Jr. Information, attached hereto as Exhibit 5.[3]  Each of these individuals was sentenced to time served (1 day).

The conduct for which Mr. Kresling pled guilty is virtually identical to the conduct in these previous cases. Although the nine prior defendants were charged with different offenses, what matters most in evaluating sentencing disparities is the real conduct at issue. As the Supreme Court has explained, "uniformity does not consist simply of similar sentences for those convicted of violations of the same statute . . . . It consists, more importantly, of similar relationships between sentences and real conduct, relationships that Congress' sentencing statutes helped to advance[.]" Booker, 543 U.S. at 253-54. Accordingly, this factor weighs

1 L. Hurley, Reuters, "Rare protest disrupts U.S. Supreme Court session" (Feb. 26, 2014), available at http://www.reuters.com/article/us-usa-court-protest-idUSBREA1P1T920140226.
2 A. Liptak, The New York Times, "One by One, Protesters Interrupt Supreme Court" (Jan. 21, 2015), available at https://www.nytimes.com/2015/01/22/us/one-by-one-protesters-interrupt-supreme-court-over-citizens-united-case.html.
3 Curt Ries, Jr. Information, attached hereto as Exhibit 5, consists of the Information, Gerstein affidavit, and Judgment and Commitment Order for only one of these defendants because the documents are virtually identical with respect to the other defendants and all received the same sentence.  These co-defendant cases are United States v. Flores-Quilty, 2015 CMD 971, United States v. Batcher, 2015 CMD 967; United States v. Gonzalez, 2015 CMD

heavily in favor of a sentence of time served.

### III.    OBJECTION TO APPLICATION OF MANDATORY MINIMUM SENTENCE

Imposing a 12-month sentence would also be unjust.  The facts here are that Mr. Kresling and his co-defendants sang a song during a Supreme Court proceeding.  While the actions admittedly violate 18 USC §1507 and 40 USC §6134, they do not require this court to follow the guidelines and impose the maximum sentence available for a Class A Misdemeanor.

### IV.    SENTENCING BELOW THE GUIDELINES IS NECESSARY

The Court, after considering all of the evidence presented in the plea hearing, the facts and circumstances surrounding Mr. Kresling's involvement in this matter, the one day in jail and 25 months already spent on supervised pre-trial probation, the letter in support, the Sentencing Guidelines, the Presentence Investigation Report, and the Defendant's explanation for committing the offenses, should disregard the recommendation set forth by the sentencing guidelines and impose no further punishment on Defendant, Matthew Kresling.

Mr. Kresling has been an activist across the country for most of his adult life.  He has traveled the country advocating for change through civil disobedience and has put others before himself by risking his liberty for causes in which he believes.  While the Court must weigh the importance of imposing a sentence that deterring others from committing the same offense, the court must also consider the impact and chilling effect incarceration will have on our Constitution and the First Amendment right to freedom of expression.

Additionally, the sentencing guidelines are ineffective at reaching a result in which the Court can be comfortable.  The guidelines recommend a sentence of incarceration above the statutory range in which the Court may sentence the Defendant.  The Court should also consider other similar cases adjudicated in the District of Columbia.  Those cases resulted in time served

---

968; United States v. Philipson, 2015 CMD 963; and United States v. Zeiser, 2015 CMD 964. Docket information is

and not the significant jail time recommended by the sentencing guidelines.

Weighing and considering all of the above, the Court should find that a downward departure from the sentencing guidelines is necessary, and that incarceration is not necessary to reach a sentence that is sufficient, but not greater than necessary, to comply with the statutory directives pursuant to 18 U.S.C. §3553(a).

## **CONCLUSION**

For the foregoing reasons, Matthew Kresling respectfully submits that a sentence which is capped at the time served by Mr. Kresling is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. §3553(a).

DATE SUBMITTED: July 17, 2017                    MATTHEW KRESLING
                                                 By Counsel

ANDREW CLARKE LAW, PLLC
1712 I STREET, NW, SUITE 915
WASHINGTON, DC, 20006
Telephone: (202)780-9144
a.clarke@aclarkelaw.com

/s/Andrew O. Clarke
Andrew O. Clarke, Esquire
DC BAR NO # 1032649
*Counsel for David Bronstein and Matthew Kresling*

---

available from the Superior Court's website at https://www.dccourts.gov/cco/maincase.jsf

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of July, 2017, I electronically filed the foregoing Sentencing Memorandum with the Clerk of Clerk using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Lisa Walters
*Assistant U.S. Attorney*
Email: lisa.walters@usdoj.gov

Jeffrey Light
*Counsel for Yasmina Mrabet, Belinda Rodriguez, Richard Saffle*
Email: jeffrey@lawofficeofjeffreylight.com

/s/Andrew O. Clarke
Andrew O. Clarke, Esquire