UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| vs. | ) Case No. 1:15-cr-48-3 (CRC) |
| YASMINA MRABET, | ) |
| DEFENDANT | ) |

# DEFENDANT MRABET'S SENTENCING MEMORANDUM

Yasmina Mrabet is a community organizer and political activist who is deeply committed to participatory democracy. She holds a deep and sincere belief that the United States Supreme Court has undermined the ability of Americans to have free and fair elections without undue influence from corporate contributions. To draw attention to this issue, she engaged in an act of civil disobedience – interrupting a swearing-in ceremony at the Supreme Court to voice opposition to the Supreme Court's decision in *Citizens United*. In engaging in an act of civil disobedience, Ms. Mrabet was prepared to, and has, fully accepted responsibility for her actions and pled guilty to the Information without the benefit of a plea bargain and without contesting her guilt.

In consideration of the statutory factors, a significant downward departure from the Sentencing Guideline range of 10-12 months is warranted in this case. For the reasons set forth below, a sentence of time served, running concurrently on both counts, would be "sufficient, but not greater than necessary" to comply with the goals of sentencing. *See* 18 U.S.C. § 3553(a). Such a sentence would properly reflect the fact that Ms. Mrabet's

actions were motivated by an attempt to benefit society and not for any personal benefit; that her actions were nonviolent and symbolic; that her actions were not designed to, and did not have the effect of, intimidating a juror or judicial officer in the discharge of their duties; that in two cases involving virtually identical conduct, the sentence imposed was time served; that sound policy reasons counsel a drastic reduction in the sentence from the range contemplated by the Sentencing Guidelines; that the proceedings so far have already served as an adequate deterrent to future similar actions; that Ms. Mrabet will not benefit from correctional treatment; and that there is no need to protect the public from further criminal acts by Ms. Mrabet.

## I.  18 U.S.C. §3553(a)

A sentencing court has a duty to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" enumerated in the second paragraph of the statute. 18 U.S.C. 3553(a). These purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

Additionally, the Court "shall consider": the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the kinds of sentence and the sentencing range established by the Sentencing Commission; any pertinent Sentencing Commission policy statement; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty

of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. 3553(a).

## II. Sentencing Guidelines

In some cases, the Sentencing Guidelines, which are merely advisory, have little persuasive weight. Although "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," a sentencing court "may not presume that the Guidelines range is reasonable, and by the same token there is no "presumption of unreasonableness for sentences outside the Guidelines range." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Instead, the sentence must simply be substantively reasonable, taking into account "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* at 51. Further, as the Supreme Court has made clear, an appellate court cannot require there to be "'extraordinary' circumstances to justify a sentence outside the Guidelines range[.]" *Id.* 47.

A district also has authority to reject vary categorically from the Guidelines based on *policy disagreement* with them, "and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Spears v. United States*, 555 U.S. 261, 264, 366 (2009) (permitting departure based on policy disagreement with crack cocaine to powder cocaine sentencing ratio). *See also United States v. Fry*, 851 F.3d 1329 (D.C. Cir. 2017) (noting that "several courts of appeals have allowed district courts to vary downward from the child-pornography Guidelines based on policy disagreements with those Guidelines.")

Recently, the Supreme Court again emphasized that the Sentencing Guidelines "merely guide the district courts' discretion," and "do not constrain th[at] discretion[.]" *Beckles v. United States*, 137 S. Ct. 886, 894 (2017) (alteration in original). The Guidelines simply "advise sentencing courts how to exercise their discretion within the bounds established by Congress." *Id.* at 895.

This Court therefore has ample discretion to impose a sentence that is a significant downward departure from what is recommended by the Sentencing Guidelines for the defendants. After fulfilling the procedural requirements, including calculating the guideline sentence,[1] the Court can and should apply the statutory factors to substantially depart downwards from the Sentencing Guidelines in this case.

### III.     Application of 18 U.S.C. §3553(a) to Defendant

#### A. The Nature and Circumstances of the Offense

A conviction under 18 U.S.C. § 1507 may be predicated on one or both of two categories of intent: "intent of interfering with, obstructing, or impeding the administration of justice," (hereinafter "intent to obstruct the administration of justice") and "intent of influencing any judge, juror, witness, or court officer, in the discharge of his duty" (hereinafter "intent to influence.") The facts demonstrate that Defendants only

---

[1] Ms. Mrabet objects to the Pretrial Investigation Report's calculation of the Guidelines range. The report concluded that the applicable score is 12. The criminal score should be 11, reflecting an additional one point subtraction for "unidentified circumstances," § 5K2.0(a), or "lesser harms," § 5K2.11. The basis for these departures is the same as the basis identified in Section III.A of this Memorandum for the nature and circumstances of the offense.

had an intent to influence, and as described below, this factor should weigh against a heavy sentence.

The Supreme Court has observed that the enactment of 18 U.S.C. § 1507 "resulted from the picketing of federal courthouses by partisans of the defendants during trials involving leaders of the Communist Party. This picketing prompted an adverse reaction from both the bar and the general public." *Cox v. Louisiana*, 379 U.S. 559, 561 (1965). The legislative history of 18 U.S.C. § 1507 reveals that although Congress included the intent to influence provision, it was primarily concerned with intent to obstruct the administration of justice. The provision concerning picketing of courthouses was prompted by pickets which "have ranged from 300 to 750 and the noise created by loud chanting (and in one instance, by a sound truck) seriously hampered the administration of justice." 96 Appx. Cong. Rec. A6898 at A7125 (Sep. 23, 1950) (résumé of the Internal Security Act of 1950). (Ex. 1.)

When Congress considered criminal justice reform in 1981, the distinction between the two types of intent was made explicit. The Senate Committee on the Judiciary proposed a new offense which would have carried forward only the portion of 18 U.S.C. § 1507 which prohibits an intent to influence. (Ex. 2) ("[T]his section covers only the latter type of intentional conduct.") More serious acts done with intent to obstruct justice would have been prohibited by other sections, such as those involving communications with jurors or obstructing a government function by physical interference. (Ex. 2.)

After noting that 18 U.S.C. § 1507 is punishable by up to one year in prison, the Committee recommended that this new section be classified as a Class B misdemeanor.

The National Commission would have gone even further, recommending a "drastic reduction in severity to a maximum of thirty days in prison." (Ex. 2.)

The Committee also sought to distinguish between conduct aimed at intimidating those involved with the proceeding from conduct simply designed to show the public one's position on an issue pending before a court. The proposed crime would therefore have contained a defense designed to "permit[] interested persons at reasonable times to show to the public their position on an issue or case that many [sic] be pending before a court so long as the conduct is clearly an expression of an opinion and not an attempt to intimidate those persons responsible for or participating in the proceeding." (Ex. 2.) The Committee noted that "[i]n the Nation's past, there have been cross-burnings by angry crowds, vigils by men in white hoods, and demonstrations by would-be vigilantes carrying ropes," and stated that "[w]hile such persons may give expression to their views under our system of government, the may not do so at the expense of rights of defendants and litigants in a manner specifically designed to assert improper influence on a judicial proceeding[.]" (Ex. 2.)

The Committee and Congressional history persuasively explain that there are salient differences between the different kinds of acts and intents prohibited by 18 U.S.C. § 1507. Here, Ms. Mrabet's conduct was not aimed at intimidating any judicial officer, but was simply designed to show the public her position on an issue of public importance. Sound policy counsels a significant downward departure from the Guidelines ranges for Ms. Mrabet, in contrast to a defendant who acts as an angry vigilante.

Additionally, the Guidelines' equation of Felony Obstruction of Justice with 18 U.S.C. § 1507 is problematic because the maximum penalty for these offenses is vastly

different. The former is punishable by incarceration from 3 years to 30 years. 18 U.S.C. § 1512(d)(4), (a)(3)(ii). Thus, if Ms. Mrabet had been charged with the more serious offense of Felony Obstruction of Justice, the Guidelines would recommend 10-16 months, much less than the potential maximum sentence. Applying the same Guidelines recommendation of 10-16 months to Ms. Mrabet for the charge under 18 U.S.C. § 1507 results in a Guidelines recommendation that exceeds the maximum statutory penalty for that offense. Applying the Guidelines to 18 U.S.C. § 1507 means that a defendant would *never* be sentenced to less than 83% of the maximum penalty for that offense.  The Guidelines' use of the same base level offense for Felony Obstruction of Justice and a Class A misdemeanor thus provides an inappropriate framework within which to determine how to punish a defendant for violation of 18 U.S.C. § 1507. A more useful metric would be to apply the ratio between the maximum punishment and the Guidelines' range for Felony Obstruction of Justice. Applying that ratio here would allow for a sentence ranging from 0 days to one and a half months.

   B.  **The Need to Avoid Sentencing Disparities**

**[describe two previous cases with time served as sentence]**

   C.  **Affording Adequate Deterrence**

Ms. Mrabet has already been adequately deterred from repeating her actions and therefore this factor weighs in favor a departure from the Guidelines. As a result of her actions at the Supreme Court, Ms. Mrabet has experienced the loss of liberty that accompanies being arrested and detained; has had to pay the expenses and bear the

burden of returning to Court on number occasions; has faced the anxiety of a potential sentence of over one year of incarceration and a potential fine of over $100,000; and has served two years on pretrial release with conditions that are substantially similar to supervised probation. Additionally, after sentencing she will be required to pay a special assessment.

Ms. Mrabet has only a single prior conviction which is for a minor offense (drunk in public) and had not been aware of the full extent of the consequences which could and would result from her actions. Her experience of being prosecuted for a federal crime in this case has itself already served as a deterrent from future conduct, as she will explain at her allocution.

Ms. Mrabet will also explain at her allocution how, since her arrest, she has been engaging in lawful and productive means to express her views. This statement from Ms. Mrabet, when taken in combination with the fact that she not been rearrested or engaged in disruptive conduct while on pretrial release, confirms that there is no need for any further deterrence.

### D.  Characteristics of the Defendant and Lack of Need for Correctional Training

Ms. Mrabet is not in need of any training or services from a correctional institute. She is gainfully employed, well-educated, and is not engaged in substance abuse. She is not in need of vocational training or any of the other services provided by a correctional institute.

### E. The Absence of a Need to Protect the Public from Further Crimes of the Defendant

Although her actions at the Supreme Court were disruptive and illegal, there is no need to protect the public from potential further crimes by Ms. Mrabet. Throughout the proceedings in this case, Ms. Mrabet has demonstrated respect for the Court and the legal process. She has not missed any Court appearances, has not been in any way disruptive of the proceedings, and has been courteous in addressing the Court.

Additionally, there were no identifiable victims in this case, let alone victims in need of protection from further actions by Ms. Mrabet. Her actions at the Supreme Court posed no threat to anyone's safety, liberty, or property. While her disruptive actions undoubtedly impeded the progress of the Court's proceedings on that day, she did not attempt to influence the justice's decision in any currently pending case, nor did she cause prejudice to the rights of any party. Indeed, the disruption occurred at a time when oral arguments were not taking place and therefore did not even impede any party's ability to make a presentation to the Court in an orderly fashion.

Finally, because Ms. Mrabet has a minimal prior criminal history and these court proceedings have already had a significant deterrent effect, there is no reason to believe that Ms. Mrabet will commit the same or substantially similar crimes in the future.

/s/ Jeffrey Light

Jeffrey L. Light
LAW OFFICE OF JEFFREY LIGHT
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey@LawOfficeOfJeffreyLight.com
*Attorney for Defendants*