UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| vs. | ) Case No. 1:15-cr-48-5 (CRC) |
| RICHARD SAFFLE, | ) |
| DEFENDANT | ) |

### DEFENDANT SAFFLE'S SENTENCING MEMORANDUM

Richard Saffle is a political activist who is deeply committed to improving our democracy. He became politically active following the Supreme Court's decisions in *Citizens United* and *McCutcheon*.[1] He holds a deep and sincere belief that the United States Supreme Court has undermined the ability of Americans to have free and fair elections without undue influence from corporate contributions. On the anniversary of the *McCutcheon* decision, he engaged in an act of civil disobedience – interrupting a swearing-in ceremony at the Supreme Court to voice opposition to the Supreme Court's decisions in *McCutcheon* and *Citizens United*. In engaging in an act of civil disobedience, Mr. Saffle was prepared to, and has, fully accepted responsibility for his actions and pled guilty to the Information without the benefit of a plea bargain and without contesting his guilt.

---

[1] *McCutcheon v. FEC*, 134 S. Ct. 1434 (2014); *Citizens United v. FEC*, 558 U.S. 310 (2010).

In consideration of the statutory factors, a significant downward departure from the Sentencing Guideline range of 10-12 months is warranted in this case. For the reasons set forth below, a sentence of time served, running concurrently on both counts, would be "sufficient, but not greater than necessary" to comply with the goals of sentencing. *See* 18 U.S.C. § 3553(a). Such a sentence would properly reflect the fact that Mr. Saffle's actions were motivated by an attempt to benefit society and not for any personal benefit; that his actions were nonviolent and symbolic; that his actions were not designed to, and did not have the effect of, intimidating a juror or judicial officer in the discharge of their duties; that in two cases involving virtually identical conduct, the sentence imposed was time served; that sound policy reasons counsel a drastic reduction in the sentence from the range contemplated by the Sentencing Guidelines; that the proceedings so far have already served as an adequate deterrent to future similar actions; that Mr. Saffle will not benefit from correctional treatment; and that there is no need to protect the public from further criminal acts by Mr. Saffle.

### I.     18 U.S.C. §3553(a)

A sentencing court has a duty to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" enumerated in the second paragraph of the statute. 18 U.S.C. 3553(a). These purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

Additionally, the Court "shall consider": the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the kinds of sentence and the sentencing range established by the Sentencing Commission; any pertinent Sentencing Commission policy statement; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. 3553(a).

## II.     Sentencing Guidelines

In some cases, the Sentencing Guidelines, which are merely advisory, have little persuasive weight. Although "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," a sentencing court "may not presume that the Guidelines range is reasonable, and by the same token there is no "presumption of unreasonableness for sentences outside the Guidelines range." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Instead, the sentence must simply be substantively reasonable, taking into account "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* at 51. Further, as the Supreme Court has made clear, an appellate court cannot require there to be "'extraordinary' circumstances to justify a sentence outside the Guidelines range[.]" *Id.* 47.

A district also has authority to reject vary categorically from the Guidelines based on *policy disagreement* with them, "and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Spears v. United States*, 555 U.S. 261, 264, 366 (2009) (permitting departure based on policy disagreement with crack

cocaine to powder cocaine sentencing ratio). *See also United States v. Fry*, 851 F.3d 1329 (D.C. Cir. 2017) (noting that "several courts of appeals have allowed district courts to vary downward from the child-pornography Guidelines based on policy disagreements with those Guidelines.")

Recently, the Supreme Court again emphasized that the Sentencing Guidelines "merely guide the district courts' discretion," and "do not constrain th[at] discretion[.]" *Beckles v. United States*, 137 S. Ct. 886, 894 (2017) (alteration in original). The Guidelines simply "advise sentencing courts how to exercise their discretion within the bounds established by Congress." *Id.* at 895.

This Court therefore has ample discretion to impose a sentence that is a significant downward departure from what is recommended by the Sentencing Guidelines for the defendants. After fulfilling the procedural requirements, including calculating the guideline sentence,[2] the Court can and should apply the statutory factors to substantially depart downwards from the Sentencing Guidelines in this case.

**III.    Application of 18 U.S.C. §3553(a) to Defendant**

**A.  The Nature and Circumstances of the Offense**

A conviction under 18 U.S.C. § 1507 may be predicated on one or both of two categories of intent: "intent of interfering with, obstructing, or impeding the

---

[2] Mr. Saffle objects to the Pretrial Investigation Report's calculation of the Guidelines range. The report concluded that the applicable score is 12. The criminal score should be 11, reflecting an additional one point subtraction for "unidentified circumstances," § 5K2.0(a), or "lesser harms," § 5K2.11. The basis for these departures is the same as the basis identified in Section III.A of this Memorandum for the nature and circumstances of the offense.

administration of justice," (hereinafter "intent to obstruct the administration of justice") and "intent of influencing any judge, juror, witness, or court officer, in the discharge of his duty" (hereinafter "intent to influence.") The facts demonstrate that Defendants only had an intent to influence, and as described below, this factor should weigh against a heavy sentence.

The Supreme Court has observed that the enactment of 18 U.S.C. § 1507 "resulted from the picketing of federal courthouses by partisans of the defendants during trials involving leaders of the Communist Party. This picketing prompted an adverse reaction from both the bar and the general public." *Cox v. Louisiana*, 379 U.S. 559, 561 (1965). The legislative history of 18 U.S.C. § 1507 reveals that although Congress included the intent to influence provision, it was primarily concerned with intent to obstruct the administration of justice. The provision concerning picketing of courthouses was prompted by pickets which "have ranged from 300 to 750 and the noise created by loud chanting (and in one instance, by a sound truck) seriously hampered the administration of justice." 96 Appx. Cong. Rec. A6898 at A7125 (Sep. 23, 1950) (résumé of the Internal Security Act of 1950). (Ex. 1.)

When Congress considered criminal justice reform in 1981, the distinction between the two types of intent was made explicit. The Senate Committee on the Judiciary proposed a new offense which would have carried forward only the portion of 18 U.S.C. § 1507 which prohibits an intent to influence. (Ex. 2) ("[T]his section covers only the latter type of intentional conduct.") More serious acts done with intent to obstruct justice would have been prohibited by other sections, such as those involving communications with jurors or obstructing a government function by physical interference. (Ex. 2.)

After noting that 18 U.S.C. § 1507 is punishable by up to one year in prison, the Committee recommended that this new section be classified as a Class B misdemeanor. The National Commission would have gone even further, recommending a "drastic reduction in severity to a maximum of thirty days in prison." (Ex. 2.)

The Committee also sought to distinguish between conduct aimed at intimidating those involved with the proceeding from conduct simply designed to show the public one's position on an issue pending before a court. The proposed crime would therefore have contained a defense designed to "permit[] interested persons at reasonable times to show to the public their position on an issue or case that many [sic] be pending before a court so long as the conduct is clearly an expression of an opinion and not an attempt to intimidate those persons responsible for or participating in the proceeding." (Ex. 2.) The Committee noted that "[i]n the Nation's past, there have been cross-burnings by angry crowds, vigils by men in white hoods, and demonstrations by would-be vigilantes carrying ropes," and stated that "[w]hile such persons may give expression to their views under our system of government, the may not do so at the expense of rights of defendants and litigants in a manner specifically designed to assert improper influence on a judicial proceeding[.]" (Ex. 2.)

The Committee and Congressional history persuasively explain that there are salient differences between the different kinds of acts and intents prohibited by 18 U.S.C. § 1507. Here, Mr. Saffle's conduct was not aimed at intimidating any judicial officer, but was simply designed to show the public his position on an issue of public importance. Sound policy counsels a significant downward departure from the Guidelines ranges for Mr. Saffle, in contrast to a defendant who acts as an angry vigilante.

Additionally, the Guidelines' equation of Felony Obstruction of Justice with 18 U.S.C. § 1507 is problematic because the maximum penalty for these offenses is vastly different. The former is punishable by incarceration from 3 years to 30 years. 18 U.S.C. § 1512(d)(4), (a)(3)(ii). Thus, if Mr. Saffle had been charged with the more serious offense of Felony Obstruction of Justice, the Guidelines would recommend 10-16 months, much less than the potential maximum sentence. Applying the same Guidelines recommendation of 10-16 months to Mr. Saffle for the charge under 18 U.S.C. § 1507 results in a Guidelines recommendation that exceeds the maximum statutory penalty for that offense. Applying the Guidelines to 18 U.S.C. § 1507 means that a defendant would *never* be sentenced to less than 83% of the maximum penalty for that offense. The Guidelines' use of the same base level offense for Felony Obstruction of Justice and a Class A misdemeanor thus provides an inappropriate framework within which to determine how to punish a defendant for violation of 18 U.S.C. § 1507. A more useful metric would be to apply the ratio between the maximum punishment and the Guidelines' range for Felony Obstruction of Justice. Applying that ratio here would allow for a sentence ranging from 0 days to one and a half months.

### B. The Need to Avoid Sentencing Disparities

There have been two recent prosecutions for conduct almost identical to that engaged in by Mr. Saffle and both resulted in sentences of time served. In order to avoid disparities in sentencing, a similar sentence of time serve should be imposed here.

On February 26, 2014, Kai Newkirk began a speech in the Supreme Court which interrupted court proceedings. (Ex. 3.) Mr. Newkirk shouted slogans such as "Money is

not speech," "Corporations are not people," and "Overturn *Citizens United*."[3] He pled guilty to the Information and was sentenced by the District of Columbia Superior Court to time served. (Ex. 3.)

On January 21, 2015, a group of eight individuals stood, one after another, and yelled loudly toward the front of the courtroom. The defendants yelled statements such as "Overturn *Citizens United*," "One person, one vote," and "We are the 99 percent[.]"[4] They yelled loudly enough to divert the attention of everyone inside the courtroom. (Ex. 4.)[5] Each of these individuals was sentenced to time served (1 day).

The conduct for which Mr. Saffle pled guilty is virtually identical to the conduct in these previous cases. Although the nine prior defendants were charged with different offenses, what matters most in evaluating sentencing disparities is the real conduct at issue. As the Supreme Court has explained, "uniformity does not consist simply of similar sentences for those convicted of violations of the same statute . . . . It consists, more importantly, of similar relationships between sentences and real conduct,

---

[3] L. Hurley, Reuters, "Rare protest disrupts U.S. Supreme Court session" (Feb. 26, 2014), available at http://www.reuters.com/article/us-usa-court-protest-idUSBREA1P1T920140226

[4] A. Liptak, *The New York Times*, "One by One, Protesters Interrupt Supreme Court" (Jan. 21, 2015), available at https://www.nytimes.com/2015/01/22/us/one-by-one-protesters-interrupt-supreme-court-over-citizens-united-case.html

[5] Exhibit 4 consists of the Information, *Gerstein* affidavit, and Judgment and Commitment Order for only one of these defendants because the documents are virtually identical with respect to the other defendants and all received the same sentence. These co-defendant cases are *United States v. Flores-Quilty*, 2015 CMD 971, *United States v. Batcher*, 2015 CMD 967; *United States v. Gonzalez*, 2015 CMD 968; *United States v. Philipson*, 2015 CMD 963; and *United States v. Zeiser*, 2015 CMD 964. Docket information is available from the Superior Court's website at https://www.dccourts.gov/cco/maincase.jsf

relationships that Congress' sentencing statutes helped to advance[.]" *United States v. Booker*, 543 U.S. 220, 253-54 (2005). Accordingly, this factor weighs heavily in favor of a sentence of time served.

### C. Affording Adequate Deterrence

Mr. Saffle has already been adequately deterred from repeating his actions and therefore this factor weighs in favor a departure from the Guidelines. As a result of his actions at the Supreme Court, Mr. Saffle has experienced the loss of liberty that accompanies being arrested and detained; has had to pay the expenses and bear the burden of returning to Court on number occasions; has faced the anxiety of a potential sentence of over one year of incarceration and a potential fine of over $100,000; and has served two years on pretrial release with conditions that are substantially similar to supervised probation. Additionally, after sentencing he will be required to pay a special assessment.

Mr. Saffle has only a single conviction for a minor offense (possession of marijuana) from when he was 18 and had not been aware of the full extent of the consequences which could and would result from his actions. His experience of being prosecuted for a federal crime in this case has itself already served as a deterrent from future conduct, as he will explain at his allocution.

<u>As his colleagues from Wolf-PAC[6] attest in their letters to the Court, since the time of his arrest, Mr. Saffle has shown "patience and respect for the democratic process" and</u>

---

[6] Wolf-PAC is a cross-partisan political organization working "[t]o save democracy in the United States by getting a much needed amendment to the U.S. Constitution that will establish elections which are free of the corrupting influence of money in our political

"great respect for the Democratic process and representatives therein." (Ex. 5 at 1, 4.) "[S]ince his arrest he is committed to helping work for reforms the right way, within the system rather than outside of it." (Ex. 5 at 5.) For example, he currently works to effect change by speaking with his representatives in the West Virginia state legislature and attending town halls, and has not been disruptive at any of these or other proceedings. (Ex. 5 at 2.) Instead, he has been "respectful and non-confrontational," (Ex. 5 at 4) and has "channeled his energy to develop positive and productive relationships with lawmakers" (Ex. 5 at 5). He is one of the most dedicated leaders at Wolf-PAC and attended a retreat to learn to peacefully pass legislation through the states (Ex. 5 at 3.)

### D. Characteristics of the Defendant and Lack of Need for Correctional Training

Mr. Saffle is not in need of any training or services from a correctional institute. He is gainfully employed and is not engaged in substance abuse. He is not in need of vocational training or any of the other services provided by a correctional institute.

### E. The Absence of a Need to Protect the Public from Further Crimes of the Defendant

Although his actions at the Supreme Court were disruptive and illegal, there is no need to protect the public from potential further crimes by Mr. Saffle. Throughout the proceedings in this case, Mr. Saffle has demonstrated respect for the Court and the legal

---

system and fair enough that any citizen can run for office, not just millionaires and their allies." See http://www.wolf-pac.com/the_plan

process. He has not missed any Court appearances, has not been in any way disruptive of the proceedings, and has been courteous in addressing the Court.

Additionally, there were no identifiable victims in this case, let alone victims in need of protection from further actions by Mr. Saffle. His actions at the Supreme Court posed no threat to anyone's safety, liberty, or property. While his disruptive actions undoubtedly impeded the progress of the Court's proceedings on that day, he did not attempt to influence the justice's decision in any currently pending case, nor did he cause prejudice to the rights of any party. Indeed, the disruption occurred at a time when oral arguments were not taking place and therefore did not even impede any party's ability to make a presentation to the Court in an orderly fashion.

Finally, because Mr. Saffle has no prior criminal history and these court proceedings have already had a significant deterrent effect, there is no reason to believe that Mr. Saffle will commit the same or substantially similar crimes in the future.

/s/ Jeffrey Light

Jeffrey L. Light
LAW OFFICE OF JEFFREY LIGHT
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey@LawOfficeOfJeffreyLight.com
*Attorney for Defendants*