**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 15-48-002 (CRC)** |
| | : | |
| **MATTHEW KRESLING,** | : | **Sentencing Hearing: July 24, 2017** |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, respectfully recommends that the Court sentence defendant Matthew Kresling to ten (10) days incarceration on each count of the information to run concurrent, with a one-year period of supervised release, a stay away from the U.S. Supreme Court building and grounds and a $100.00 fine.[1] In support of its memorandum and recommendation, the United States relies on the following points and authorities, and any other representations that it may cite at the sentencing hearing.

## BACKGROUND

On May 4, 2017, the defendant entered a plea of guilty to Counts One and Two of the Superseding Information, charging Picketing or Parading, in violation of 18 U.S.C. § 1507, punishable by imprisonment for up to one year and Speeches and Objectionable Language in the Supreme Court Building and Grounds, in violation of 40 U.S.C. § 6134, punishable by

---

[1] See Attachment 1. The condition requiring the Mr. Grogan to stay away from the U.S. Supreme Court building and grounds does not include the perimeter sidewalks as discussed in *U.S. v. Grace*, 461 U.S. 171 (1983).

imprisonment for up to 60 days.   Had this case proceeded to trial, the government's evidence would have established the following facts beyond a reasonable doubt:

On April 1, 2015, the United States Supreme Court ("USSC") was in session and all nine Supreme Court Justices were present and presiding over the USSC's calendar. Before 8:30 a.m., Defendants David Bronstein, Matthew Kresling, Yasmina Mrabet, Belinda Rodriguez and Richard Saffle arrived at the USSC. Shortly before 10:00 a.m., they entered the building and proceeded through security checkpoints. After clearing the security, they entered the Upper Great Hall, went inside the courtroom and seated themselves in the courtroom.

In the courtroom, there are three sections of wooden pews where members of the public are allowed to sit, facing the bench, to observe the Court's proceedings. Each section is separated by a narrow aisle and has six wooden pews. There is additional seating for the public, individual chairs, separated by a narrow aisle and directly behind these wooden pews. Defendants Bronstein, Saffle and Rodriguez were seated in chairs directly behind the section of pews on the far left and Defendant Mrabet was seated in the section on the far left in the last pew in front of Defendants Bronstein and Saffle. Defendant Kresling was seated in the middle section in the last pew, less than ten feet away from the other defendants.

At 9:55 a.m., the Justices, who were not inside the courtroom, were notified, by the sounding of a buzzer that court would begin in five minutes. Prior to this time, Supreme Court Police ("SCP") officers were inside the courtroom and standing at specific posts throughout the courtroom. There were three officers standing in front of the benches where the public was seated. After the buzzer rang, SCP Officer Dunford, in a loud voice, read the following statement:

**Welcome to the Supreme Court of the United States. During today's oral arguments it is important that you remain seated**

> **and silent. When the first case breaks, please remain silent. If you are remaining for the second case, remain seated. If you are leaving, silently exit the Courtroom. If you are seated to my left, please exit through the gates to your right. (Officer motions to the section and the gates.) If you are seated in the Center Section please exit through the rear door directly behind you. (Officer motions to the section and the door.) If you are seated to my right, please exit through the gates to your left. (Officer motions to the section and the gates.) Please alert one of the police officers if you observe anything suspicious, and in the event of an emergency, please remain calm and follow the directions of a police officer. Thank you.**

At 10:00 a.m., the buzzer sounded a second time. Then, the Marshal of the U.S. Supreme Court struck a gavel to indicate the start of the Court session. The SCP officers, who were posted directly in front of the benches where the public was seated, extended their arms and raised them in an upward motion repeatedly, indicating to the members of the public that they should stand. The Marshal opened Court, as the Justices were proceeding into the courtroom, by stating:

> **The Honorable, the Chief Justice, and the Associate Justices of the Supreme Court of the United States. Oyez! Oyez! Oyez! All persons having business before the Honorable, the Supreme Court of the United States, are admonished to draw near and give their attention, for the Court is now sitting. God save the United States and this Honorable Court.**

At the end, the Marshal struck the gavel again, and the same SCP officers extended their arms and moved them in a downward motion repeatedly, indicating to the members of the public that they should sit. Between the first buzzer and the second striking of the gavel, no one is allowed to enter or exit the courtroom.

At approximately 10:02 a.m., all persons seated in the areas designated for the members of the public sat down except for Defendant Rodriguez. Defendant Rodriguez remained standing with one arm in the air and stated, in a loud voice, "We rise to demand democracy. One person, one

vote!" SCP Officers Kempf and Dunford approached the defendant, and Officer Kempf detained the defendant and escorted her out of the courtroom into the Upper Great Hall.

As Officer Dunford was returning to his post, Defendant Kresling stood and stated, in a loud voice, "we rise to…. money is not speech. One person, one vote!" Officer Dunford detained Defendant Kresling and escorted him out of the courtroom.

Then, Defendant Mrabet stood, with one arm in the air, and stated, in a loud voice, "Justices, is it not your duty to protect our right to self-government? The first…..overturn *Citizens United*. One person, One Vote!" Officer Dunford detained and escorted Defendant Mrabet out of the courtroom.

Next, Defendant Saffle stood and stated, in a loud voice, "Justices, is it not your job to ensure free, fair elections?" Officer Williams detained Defendant Saffle and escorted him out of the courtroom.

Finally, Chief Justice Roberts, from the bench, warned "[a]nyone else interested in talking will be admonished that it's within the authority of this Court to punish such disturbances by criminal contempt."

Immediately after that warning, Defendant Bronstein sang, "we who believe in freedom shall not rest; we who believe in freedom shall not rest." Officer Carr detained Defendant Bronstein and escorted him out of the courtroom.

Each defendant was detained and escorted out of the courtroom into the Upper Great Hall without incident or injury. Each defendant was placed under arrest, and subsequently transported to the U.S. Capitol Police station to conclude the arrest process.

## SENTENCING RECOMMENDATION

In sentencing the defendant, all of the applicable factors set forth in Title 18 United States Code, Section 3553(a), should be considered by this Court. See *United States v. Gall*, 128 S. Ct. 586 (2007). These factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); (3) the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. §§ 3553(a)(4) and (a)(5)); and (4) the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)). Due to the seriousness of the offense, the need to promote respect for the law, and the need to deter the defendant, his co-conspirators and others from engaging in similar conduct in the future, this Court should sentence the defendant as recommended by the government.

### A. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense.

The purpose of the USSC building, including the courtroom, is to provide a forum where legal disputes can be adjudicated in an orderly and decorous manner. *Cox v. Louisiana*, 379 U.S. 559, 562 (1965) ("the unhindered and untrammeled functioning of our courts is part of the very foundation of our constitutional democracy"). Defendant Kresling ignored this purpose. Mr. Kresling intentionally visited the U.S. Supreme Court building, specifically, the courtroom, with the intent to interfere with, disrupt and influence the administration of justice in the highest court of the United States without regard for the disruptive impact of his conduct on the proceedings and

to the general public that attended the hearing on April 1, 2015. He engaged in an extremely loud and moderately lengthy outburst that interrupted the Court's proceedings and destroyed the respect and reverence given to the serious legal issue that was being considered by the Court on April 1, 2015.

The USSC considers and adjudicates legal controversies that have great significance to the litigants that argue the issues before the court on behalf of the American public. *Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997) ("A courtroom's very function is to provide a locus in which civil and criminal disputes can be adjudicated.") Before the USSC justices and in the presence of the general public, these litigants argue and present weighty and complicated legal cases on behalf of individuals and entities that are seeking an objective and unbiased consideration of the issues in a professional and orderly courtroom environment. Moreover, in preparing for their presentation to and appearance before the USSC, they reasonably expect and are entitled to access a courtroom environment that is free from outbursts and disruptive conduct. *Illinois v. Allen*, 397 U.S. 337, 343 (1970) ("It is essential to the proper administration of criminal justice that dignity, order and decorum be the hallmarks of all court proceedings in our country.").

To protect the integrity and impartiality of the USSC, the USSC Justices should not be subjected to drama-filled and politically-charged speeches and theatrics in the courtroom because the USSC adjudicates cases and resolves controversies that significantly affect our country as a whole, more notably the daily lives of individual citizens and business environments of corporations, non-profit organizations and other agencies. *United States v. Grace*, 461 U.S. 171, 182-183 (1983) (*Grace II*) (recognizing the importance of the appearance of judicial impartiality) and *Williams-Yulee v. Florida Bar*, 135 S. Ct. 1656, 1673 (2015) (States have a compelling interest

6

in preserving public confidence in their judiciaries). These individuals and entities are significantly, and often permanently, impacted by the unequivocally important decisions handed down by the USSC. The adjudication of these cases that affect American citizens and entities should not be disrupted or unduly influenced by individuals expressing political or personal opinions. *Cox v. Louisiana*, 379 U.S. 559, 562 (1965) ("[A] State may adopt safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence.").

The defendant, with complete disregard for respect of the law and courtroom order and decorum and with knowledge that he could be arrested and convicted for his conduct, screamed his personal political opinions with the intent of interrupting proceedings to influence the justices. Admittedly, the defendant's conduct was not assaultive and did not result in the injury of anyone; however, the defendant, while surrounded by several members of the public, had to be removed from the courtroom by members of the USSC police force. The defendant's conduct was inexcusable and unacceptable, and it demonstrated that he had no respect for the law and intended to interrupt the proceedings.

### B. The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct.

The government contends that a non-probationary sentence in which the defendant serves an uninterrupted period of incarceration, along with one year of supervised release, a stay away condition and a $1,000 fine, will deter the defendant and others from engaging in this type of criminal conduct at the USSC or in any other courtroom where the governmental interests of impartiality and order and decorum are of the utmost importance. An incarceration sentence will

promote respect for the law because it will send a clear message that this type of disruptive, uncontrollable conduct will not be tolerated, especially when it interferes with the adjudication of cases and administration of justice. Mr. Kresling's sentence in this case should reflect the view that the USSC, the highest court in the land, and other courts are not the appropriate forums for communicating political viewpoints and personal opinions.

### C. The Need to Protect the Public from Future Crimes of the Defendant.

A 10-day incarceration sentence is appropriate to protect the public from future criminal conduct by the defendant. Mr. Kresling does not have an unfettered right to exercise free speech. Free speech may be regulated by the government. *Wood v. Moss*, 134 S. Ct. 2056, 2066 (2014) ("[T]he fundamental right to speak secured by the First Amendment does not leave people at liberty to publicize their views whenever and however and wherever they please.").

### D. The History and Characteristics of the Defendant.

Mr. Kresling has prior contacts with the criminal justice system including Disturbing the Peace (California, 2011), Incommoding or Unlawful Assembly (Washington, D.C., 2016) and Trespassing (California, 2015). Additionally, while on pre-trial release in this matter, Mr. Kresling incurred a new arrest and conviction for Criminal Trepsass, stemming from events which occurred on June 19, 2017, in Pennsylvania. Mr. Kresling was ordered to pay and fine as well as court costs. Mr. Kresling failed to notify Pretrial Services of this new arrest. The government is greatly concerned that Mr. Kresling continues to engage in criminal activity even while the instant matter is pending. The government is also greatly concerned that Mr. Kresling traveled from his home in Los Angeles California, to arrive in Washington, D.C. on April 1, 2015, for the purpose of

demonstrating in the U.S.S.C. during oral arguments. If there is not a meaningful deprivation of his liberty, then the defendant will not consider adjusting his behavior in the future. Therefore, the government submits that its recommendation for an uninterrupted period of incarceration in combination with the maximum period of supervised release (with the stay away condition), and the $1,000 fine will deter him from engaging in criminal activity, allow for reflection on his criminal conduct and cause him to consider the efforts and steps he needs to take when he is released to prevent any recidivist conduct.

**WHEREFORE**, for the above reasons, the Government respectfully requests that the Court impose an incarceration sentence of ten (10) days on each count of the information to run concurrent with a one-year period of supervised release, a stay away from the U.S. Supreme Court building and grounds and a $100.00 fine.

Respectfully Submitted,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY
D.C. Bar No.: 415793

BY:      _____/s/_____
LISA NICOLE WALTERS
D.C. Bar No. 974-492
Assistant United States Attorney
United States Attorney's Office
555 Fourth Street, N.W., Room 4118
Washington, D.C. 20530
Telephone: (202) 252-7499
E-mail: Lisa.Walters@usdoj.gov

9

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel Andrew O. Clarke, via electronic mail, this 17th day of July, 2017.


_____/s/_____
LISA NICOLE WALTERS
Assistant United States Attorney